1

2

3

4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6

7   JULIE ASHE,                              Case No. 15-cv-06047-PSG

8              Plaintiff,                     **ORDER GRANTING PLAINTIFF'S**
                                              **AND DENYING DEFENDANT'S**
9        v.                                   **MOTIONS FOR SUMMARY**
                                              **JUDGMENT**
10  CAROLYN W. COLVIN,
                                              **(Re:  Docket Nos. 13, 14)**
11             Defendant.

12          Plaintiff Julie Ashe suffers from a degenerative disc disease of the lumbar spine and

13  several other complications from that condition.[1]  The Commissioner of Social Security

14  nevertheless issued a final decision denying her disability benefits, finding that she has the

15  residual functional capacity to do some categories of light work.[2]  Pursuant to 42 U.S.C. § 405(g),

16  Ashe requests judicial review of the Commissioner of Social Security's final decision.  Ashe

17  moves for summary judgment and remand,[3] while the Commissioner moves for summary

18  judgment to affirm the Commissioner's final decision.[4]  Because the Commissioner failed to

19  identify specific reasons for discounting the testimony of Ashe's treating physician and for finding

20  Ashe less than fully credible, the court GRANTS her motion for summary judgment and remands

21  for further proceedings in accordance with this ruling.  The Commissioner's motion is DENIED.

22  _____

23  [1] *See* Docket No. 12-3 at 13-14.

24  [2] *See id.* at 15.

25  [3] *See* Docket No. 13.

26  [4] *See* Docket No. 14.

27                                              1

28

United States District Court
Northern District of California

**I.**

Ashe first applied for disability benefits on May 7, 2012 under Title II of the Social Security Act, alleging disability beginning November 6, 2011.[5]  That claim was denied both initially and upon reconsideration,[6] so Ashe requested and received a hearing before an administrative law judge.[7]  After the hearing, the ALJ issued a ruling concluding that Ashe was not disabled, according to the five-step evaluation process for determining disability.[8]

The five-step evaluation process first asks whether a claimant is currently engaged in substantial gainful activity.[9]  If yes, the claimant is not disabled.  If no, the ALJ proceeds to step two and evaluates whether the claimant has a medically determinable impairment or combination of impairments that is severe.[10]  If no, the claimant is not disabled.  If yes, the ALJ proceeds to step three and considers whether the MDI or combination of impairments meets or equals any of the listed impairments under 20 C.F.R. pt. 404, subpt. P, app. 1.[11]  If yes, the claimant is disabled.  If no, the ALJ proceeds to step four, determines the claimant's residual functional capacity and assesses whether the claimant is capable of performing her past relevant work.[12]  If yes, the claimant is not disabled.  If no, the ALJ goes to step five and considers the claimant's RFC, age, education and work experience to see if the claimant can make an adjustment to other work.[13]  If yes, the claimant is not disabled; if no, the claimant is disabled.

---

[5] *See* Docket No. 12-4 at 46-47.

[6] *See id.* at 58-59; Docket No. 12-5 at 93-97.

[7] *See* Docket No. 12-5 at 98-102.

[8] *See* Docket No. 12-3 at 11-20.

[9] *See* 20 C.F.R. § 416.920(a)(4)(i).

[10] *See* 20 C.F.R. § 416.920(a)(4)(ii).

[11] *See* 20 C.F.R. § 416.920(a)(4)(iii).

[12] *See* 20 C.F.R. § 416.920(a)(4)(iv).

[13] *See* 20 C.F.R. § 416.920(a)(4)(v).

2

Case No. 15-cv-06047-PSG
ORDER GRANTING PLAINTIFF'S AND DENYING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT

1    The ALJ found at step one that Ashe was not engaged in substantial gainful activity.[14]  At

2   step two, the ALJ found that Ashe had the severe impairments of "degenerative disc disease of the

3   lumbar spine with radiculopathy and obesity," but also found that her depression was not severe.[15]

4   At step three, the ALJ found that Ashe did not have an impairment or combination of impairments

5   meeting or medically equaling a listed impairment.[16]  At step four, the ALJ found the following:

> [T]he claimant has the residual functional capacity to perform light
> work as defined in 20 CFR 404.1567(b) with some exceptions.  She
> can lift, carry, push, and/or pull 20 pounds occasionally and 10
> pounds frequently; stand and/or walk for about six hours in an eight-
> hour workday; and sit for about six hours in an eight-hour workday,
> with normal breaks.  The claimant can climb, balance, stoop, kneel,
> crouch, and/or crawl on no more than an occasional basis.[17]

The ALJ then found that Ashe was not capable of performing any past relevant work,[18] but at step

five the ALJ concluded that she had "acquired work skills from past relevant work that are

transferable to other occupations with jobs existing in significant numbers in the national

economy."[19]  As a result, the ALJ found that Ashe was not disabled.[20]

   Ashe requested that the Appeals Council review the ALJ's unfavorable decision, but the

Appeals Council declined.[21]  Ashe now appeals the ALJ's decision to this court, and both parties

move for summary judgment.[22]

---

[14] *See* Docket No. 12-3 at 13.

[15] *Id.* at 13-14 (citing 20 C.F.R. § 404.1520(c)).

[16] *See id.* at 14-15.

[17] *Id.* at 15-18.

[18] *See id.* at 18.

[19] *Id.* at 19.

[20] *See id.* at 19-20.

[21] *See id.* at 1-6.

[22] *See* Docket Nos. 1, 13, 14.

Case No. 15-cv-06047-PSG
ORDER GRANTING PLAINTIFF'S AND DENYING DEFENDANT'S MOTIONS FOR
SUMMARY JUDGMENT

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.

The court has jurisdiction under 42 U.S.C. § 405(g).  The parties consented to the jurisdiction of the undersigned magistrate judge under 28 U.S.C. § 636(c).[23]  The court finds this motion suitable for disposition on the papers in light of the court's local rules and procedural order.[24]

A district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing."[25]  The decision of the Commissioner should only be disturbed if it is not supported by substantial evidence or if it is based on legal error.[26]  Substantial evidence is evidence that a reasonable mind would accept as adequate to support the conclusion.[27]  Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld.[28]

## III.

Applying the standards above, both of Ashe's objections require remand.

**First**, Ashe argues that the ALJ erred in affording "little weight" to the opinion of Ashe's treating internist, Dr. Samuel Wu.[29]  As a threshold matter, the ALJ must consider all medical opinion evidence.[30]  The ALJ should assign "controlling weight" to a treating physician's opinion

---

[23] *See* Docket Nos. 9, 10.

[24] *See* Docket No. 7; Civ. L.R. 7-1(b); Civ. L.R. 16-5.

[25] 42 U.S.C. § 405(g).

[26] *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

[27] *See Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("[It] is more than a mere scintilla but less than a preponderance.").

[28] *See Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

[29] Docket No. 12-3 at 16.

[30] *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).

4

Case No. 15-cv-06047-PSG
ORDER GRANTING PLAINTIFF'S AND DENYING DEFENDANT'S MOTIONS FOR
SUMMARY JUDGMENT

1   where medically approved diagnostic techniques support the opinion and it is consistent with other

2   substantial evidence.[31]  A treating physician's opinion is given more weight than an examining or

3   non-examining physician's opinion[32] because these physicians are in a better position to know

4   plaintiffs as individuals, and because the continuity of their treatment improves their ability to

5   understand and assess an individual's medical concerns.[33]

6          Thus, if a treating physician's opinion is not contradicted by another doctor, it may be

7   rejected only for "clear and convincing" reasons supported by substantial evidence in the record.[34]

8   And if the treating physician's opinion is contradicted by another doctor, the ALJ may reject the

9   treating opinion only if she provides "specific and legitimate reasons" supported by substantial

10  evidence in the record.[35]  This can be done by setting out a detailed and thorough summary of the

11  facts and conflicting clinical evidence, stating the ALJ's interpretation thereof and making

12  findings.[36]  The ALJ must do more than offer her conclusions. She must set forth her own

13  interpretations and explain why they, rather than the doctor's, are correct.[37]  "In other words, an

14  ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more

15  than ignoring it, asserting without explanation that another medical opinion is more persuasive, or

16

17

18  ───────────────

    [31] *See* 20 C.F.R. § 404.1527(d)(2); *Orn v. Astrue*, 495 F.3d 625, 623-33 (9th Cir. 2007).

19
    [32] *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *Lester v. Chater*, 81 F.3d 821, 830
20  (9th Cir. 1995).

21  [33] *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

22  [34] *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting *Bayliss*, 427 F.3d at
    1216); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009).
23
    [35] *Lester*, 81 F.3d at 830.
24
    [36] *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *Reddick v. Chater*, 157 F.3d 715, 725
25  (9th Cir. 1998).

26  [37] *See Embrey*, 849 F.2d at 421-22.

27                                                     5

28  Case No. 15-cv-06047-PSG
    ORDER GRANTING PLAINTIFF'S AND DENYING DEFENDANT'S MOTIONS FOR
    SUMMARY JUDGMENT

1    criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion."[38]

2         Here, Dr. Wu offered a medical source statement where he confirmed a diagnosis of

3    degenerative disc disease of the lumbosacral spine, opined that Ashe could sit or stand for no more

4    than 30 minutes at a time and indicated that she could never twist, stoop, crouch, squat or climb.[39]

5    Dr. Wu also estimated that Ashe would be likely to miss more than four days of work each month

6    due to her impairments or treatment.[40]  However, the ALJ found that Dr. Wu's opinion was

7    "poorly supported by the relevant medical evidence of record, including [certain of] Dr. Wu's own

8    longitudinal treatment records."[41]  For this reason, the ALJ decided to afford little weight to Dr.

9    Wu's opinion, "despite his status as a treating internist."[42]

10        The Commissioner defends the ALJ's decision on three grounds: (1) that Dr. Wu's opinion

11   conflicted with his own treatment of Ashe, (2) that Dr. Wu's opinion conflicted with other medical

12   evidence in the record and (3) that Dr. Wu's opinion conflicted with the consultative examination.

13   The ALJ himself must provide the clear and convincing reasons that he decided to reject a treating

14   physician's opinion,[43] but the ALJ's decision did not cite the last ground.[44]  The court therefore

15   does not consider it.

16        The reasons the ALJ did name do not meet the clear and convincing standard.  The ALJ

17   found that Dr. Wu's opinion ran contrary to "the relevant medical evidence of record," but in

18   support of this contention the ALJ identified only two exhibits containing Dr. Wu's longitudinal

19

20   [38] *Garrison*, 759 F.3d at 1012-13 (citation omitted).

21   [39] *See* Docket No. 12-8 at 222-24.

22   [40] *See id.* at 224.

23   [41] Docket No. 12-3 at 16.

24   [42] *Id.*

25   [43] *See Ryan*, 528 F.3d at 1198 (quoting *Bayliss*, 427 F.3d at 1216).

26   [44] *See* Docket No. 12-3 at 16.

27                                              6

United States District Court
Northern District of California

United States District Court
Northern District of California

1   treatment records, and the ALJ did not say exactly what in those exhibits contradicted Dr. Wu's

2   later opinion.[45]  Belatedly, the Commissioner argues that Dr. Wu's treatment records reveal that he

3   "treated [Ashe's] back pain conservatively by noting that she had back pain and prescribing

4   medication."[46]  It is true that an ALJ may reject a treating physician's opinion in light of "a

5   conservative course of treatment," such as when the physician simply recommends that the patient

6   "avoid strenuous activities."[47]  But Dr. Wu's treatment was not nearly so conservative—Ashe

7   visited him at least 21 times over 18 months, and Dr. Wu prescribed Ashe potent medications at

8   each visit for her back pain and later for insomnia and depression.[48]  And even if the ALJ thought

9   that Dr. Wu's treatment was conservative, he never identified that as a specific reason for giving

10  Dr. Wu's opinion little weight.

11      The Commissioner also cites a November 2011 x-ray and an October 8, 2013 MRI

12  report.[49]  But the Commissioner omits the portion of the MRI report that appears to support Dr.

13  Wu's conclusion by revealing "a 3 mm posterior disk bulge bordering on a broad based disk

14  extrusion."[50]  And in any case, the ALJ made no mention of these specific records.  The ALJ's

15  criticism of Dr. Wu's opinion "fails to offer a substantive basis for his conclusion."[51]  As such, his

16  decision on this point constitutes reversible error.

17      **Second**, Ashe argues that the ALJ erred in finding that Ashe's statements about the

18

19  _____

    [45] *Id.*

20
    [46] Docket No. 14 at 3 (citing Docket No. 12-8 at 227, 229-34, 238, 240-43, 246-51, 257-58, 265,
21  272).

22  [47] *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

23  [48] *See* Docket No. 12-8 at 227-272.

24  [49] *See id.* at 200, 275.

25  [50] *Id.* at 275.

26  [51] *Garrison*, 759 F.3d at 1013 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

27
                                        7
28  Case No. 15-cv-06047-PSG
    ORDER GRANTING PLAINTIFF'S AND DENYING DEFENDANT'S MOTIONS FOR
    SUMMARY JUDGMENT

1    intensity, persistence and limiting effects of her symptoms were "not entirely credible."[52]

2    Evaluating a claimant's symptoms is a two-step process.[53]  The ALJ first must "determine whether

3    the claimant has presented objective medical evidence of an underlying impairment which could

4    reasonably be expected to produce the pain or other symptoms alleged."[54]  At this point, the

5    claimant "need not show that her impairment could reasonably be expected to cause the severity of

6    the symptom she has alleged; she need only show that it could reasonably have caused some

7    degree of the symptom."[55]  If the claimant satisfies the first factor and there is no evidence of

8    malingering, the ALJ then must provide "specific, clear and convincing reasons" for rejecting the

9    claimant's testimony about the severity of her symptoms.[56]  If the ALJ finds a claimant's

10    testimony unreliable, the ALJ "must specifically identify what testimony is credible and what

11    testimony undermines the claimant's complaints."[57]

12         At the hearing, Ashe testified that she suffered from chronic low back pain, left lower

13    extremity radiculopathy, migraine headaches and depression, which limited her ability to lift

14    and/or carry heavy objects; sit, stand or walk for long periods; and engage in postural activities.[58]

15    The ALJ first found that Ashe had medically determinable impairments that could reasonably be

16    expected to cause these symptoms.[59]  He then found, however, that her "statements concerning the

---

[52] Docket No. 12-3 at 16.

[53] *See* 20 C.F.R. § 404.1529.

[54] *Garrison*, 759 F.3d at 1014 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).

[55] *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).

[56] *Garrison*, 759 F.3d at 1014 (quoting *Smolen*, 80 F.3d at 1281).

[57] *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (citations omitted).

[58] *See* Docket No. 12-3 at 31-34.

[59] *See* Docket No. 12-3 at 16.

8

Case No. 15-cv-06047-PSG
ORDER GRANTING PLAINTIFF'S AND DENYING DEFENDANT'S MOTIONS FOR
SUMMARY JUDGMENT

intensity, persistence and limiting effects of these symptoms [were] not entirely credible."[60]

In support of this finding, the ALJ cited "various inconsistencies in the record."[61]  On one hand, at the hearing, Ashe said that she "ha[d] a hard time" doing housework on her own and was "not keeping up with it very well."[62]  However, the ALJ found that evidence in the record showed that Ashe could "perform a wide range of activities of daily living, such as preparing basic meals, washing the dishes, sweeping the floor, vacuuming, and grocery shopping, without significant issue."[63]  The ALJ found that "[a]ctivity at this level does not comport with the claimant's allegations as to symptom severity relative to her functional limitations."[64]  He found the same with respect to Ashe's claims of impaired social functioning, because she "has normal relationships with her daughter and granddaughter."[65]

The record evidence the ALJ relies on, however, was not inconsistent with her testimony at the hearing. The examining professionals found that Ashe could "complete her adapted living skills independently [but that] it may take her extra time"[66] and that she could "do light household chores."[67]  Critically, neither said that she could perform these tasks "without significant issue," as the ALJ put it.[68]  The Commissioner argues that the ALJ's finding was correct because Ashe's activities were greater than would be expected if she experienced debilitating physical and mental

---

[60] *Id.* at 16.

[61] Docket No. 12-3 at 16.

[62] *Id.* at 33-34.

[63] *Id.* at 16 (citing Docket No. 12-8 at 211, 218).

[64] *Id.*

[65] *Id.* (citing Docket No. 12-8 at 211).

[66] Docket No. 12-8 at 211.

[67] *Id.* at 218.

[68] Docket No. 12-3 at 16.

9

Case No. 15-cv-06047-PSG
ORDER GRANTING PLAINTIFF'S AND DENYING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT

1    symptoms.[69]  But the evidence the ALJ cited for his assessment of Ashe's activity levels was not

2    so clear.  The Commissioner's citation to *Molina v. Astrue* is inapposite because, unlike the

3    claimant in *Molina*, Ashe never alleged "a totally debilitating impairment."[70]

4           The ALJ also cited Ashe's medical records and opinion evidence, including consultative

5    examinations by Dr. Pauline Bonilla and Dr. Meagan Littlepage.[71]  After conducting a

6    psychological evaluation, Dr. Bonilla diagnosed Ashe with a depressive disorder that would result

7    in a mild to moderate impairment in a variety of daily and workplace activities.[72]  The ALJ found

8    that Dr. Bonilla's opinion was "inconsistent with a dearth of mental health records in evidence"

9    and "afforded [it] little weight."[73]  As for Dr. Littlepage, she conducted an orthopedic evaluation

10   and opined afterwards that Ashe could lift, carry, push and/or pull 20 pounds occasionally and 10

11   pounds frequently, that she could stand and/or walk for about six hours in an eight-hour workday

12   and that she could sit for about six hours in an eight-hour workday, with normal breaks.[74]  Dr.

13   Littlepage also indicated that Ashe could occasionally climb, balance, stoop, kneel, crouch and

14   crawl.[75]  Finding that these opinions were consistent with Ashe's medical records, the ALJ

15   afforded Dr. Littlepage's opinion "great weight" and adopted it.[76]

16

---

[69] *See* 20 C.F.R. § 404.1529(c)(3)(i).

18   [70] 674 F.3d 1104, 1112-13 (9th Cir. 2012) (citations omitted) ("[T]he ALJ may discredit a
     claimant's testimony when the claimant reports participation in everyday activities indicating
19   capacities that are transferable to a work setting.  Even where those activities suggest some
     difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent
20   that they contradict claims of a totally debilitating impairment.").

21   [71] *See* Docket No. 12-3 at 16-18.

22   [72] *See* Docket No. 12-8 at 209-14.

23   [73] Docket No. 12-3 at 17.

24   [74] *See* Docket No. 12-8 at 216-20.

25   [75] *See id.* at 220.

26   [76] Docket No. 12-3 at 17.

27                                                    10

28   Case No. 15-cv-06047-PSG
     ORDER GRANTING PLAINTIFF'S AND DENYING DEFENDANT'S MOTIONS FOR
     SUMMARY JUDGMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

The Commissioner argues that the ALJ properly discounted Ashe's claims because they conflicted with the medical evidence in the record[77] and with the credible opinion evidence.[78]  But as above, the ALJ failed to explain adequately why Dr. Wu's opinion was entitled to less weight than Dr. Littlepage's, and thus how Ashe's alleged symptoms conflicted with the medical evidence.  Similarly, because the ALJ did not identify any meaningful inconsistencies in Ashe's testimony, he did not justify giving Dr. Littlepage's opinion greater weight than Ashe's own.  In short, the ALJ failed to provide "clear and convincing reasons" for his adverse credibility determination,[79] and this constitutes another point of reversible error.

## IV.

The court GRANTS Ashe's motion for summary judgment, DENIES the Commissioner's motion for summary judgment and remands for reconsideration consistent with this order.

**SO ORDERED.**

Dated: June 3, 2016

*Paul S. Grewal*
PAUL S. GREWAL
United States Magistrate Judge

---

[77] *See* 20 C.F.R. § 404.1529(c)(2); *Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

[78] *See* 20 C.F.R. § 404.1529(c)(4) ("In determining the extent to which your symptoms, such as pain, affect your capacity to perform basic work activities, we consider . . . statements by your treating or nontreating source or other persons about how your symptoms affect you.").

[79] *Garrison*, 759 F.3d at 1014 (quoting *Smolen*, 80 F.3d at 1281).

11